UNITED STATES
BANKRUPTCY COURT
FILED

2005 MAR 28  PM 4: 44

CLERK
MILWAUKEE. WISCONSIN

In re: LISA S. BLYTHE,

                Debtor.                  Case No. 04-26018 svk

ROBERT MULLINS                     Chapter 7

                Plaintiff,             Adv. Proc No 04-2274

    v.

LISA S. BLYTHE

                Defendant.

---

## DEFENDANT'S LIST OF WITNESSES AND EXHIBITS

Defendant, Lisa S. Blythe, herewith submits Defendant's List of Witnesses and Exhibits pursuant to the Order of the Court:

**Identification of Trial Witnesses**.

Defendant anticipates calling the following individuals for testimony in this matter:

      (a)     Paul A. Karsten
              730 Westshore Drive
              Delafield, WI 53018

Paul A. Karsten is one of the defendant's in this action. It is anticipated that Mr. Karsten will testify to events and circumstances surrounding the relationship between himself, and the Plaintiff, Robert Mullins. Mr. Karsten has detailed knowledge of the agreement that was made with the Plaintiff, how the agreement was carried out, who was involved, the obligations of the people involved and the discussions that took place with the plaintiff regarding the business of Dish Technologies.

      (b)     Lisa Blythe
              17255-B West Wisconsin Avenue
              Brookfield, WI 53045

Lisa Blythe is one of the defendant's in this action. It is anticipated that Ms. Blythe will testify to events and circumstances surrounding the relationship between her, and the interactions of Paul A. Karsten and Robert Mullins. Lisa Blythe has some of the same knowledge that Mr. Karsten has regarding the Plaintiff and the business Dish Technologies.

      (c)     Sam Presta
              519 Silver Lake Street
              Oconomowoc, WI 53066

Mr. Presta was employed by Dish Technologies in the summer of 2002 and has knowledge of the operations of Dish Technologies during the time he worked for Dish Technologies.

      (d)     Robert Mullins
               4836 Woodlawn Court
              Milwaukee, WI 53208

It is anticipated that Robert Mullins will be called adversely. Robert Mullins is the Plaintiff in this action. It is anticipated that Mr. Mullins will be called to testify to events and circumstances surrounding the relationship between himself, Paul Karsten, and Lisa Blythe, the business, Dish Technologies and all other matters relevant to this action.

      (e)     Defendant reserves the right to call any witness named by any other party in this action, to name additional witnesses identified during discovery in this case and to name additional witnesses as necessary to rebut witnesses called by any other party in this action.

**List of Exhibits to be Offered at Trial.**

1.      Letter dated September 11, 2003 from Attorney Joe Niebler Jr. with response to continuing delays by the Plaintiff.

2.      Email documentation numbered pages 1-7 detailing activity pertaining to the internet domain addresses of Dish Technologies and Odyssey Entertainment.

3.      Letter dated July, 23, 2004 from Plaintiff's attorney, Prentice and Phillips LLP, regarding transfer of ownership of receivers owned by Odyssey Entertainment.

4.      Dismissal Order dated June 15, 2004 regarding the claim of Robert Mullins.

5.      Defendant's First Set of Interrogatories and Document Requests, to plaintiff in Waukesha County Case Number 03-CV-119

6.      Answer and Counterclaims of Defendant's, Paul Karsten, Lisa Blythe and Odyssey Entertainment, LLC, in Waukesha County Case Number 03-CV-119

7.      All Plaintiff exhibits numbered 1 – 23, entered by Plaintiff's attorney.

Respectfully submitted this 28th day of March, 2005

Defendant
Lisa S. Blythe

By:_____

Paul A. Karsten

Lisa S. Blythe
17255-B West Wisconsin Avenue
Brookfield, WI 53045

LAW OFFICES

# NIEBLER & MUREN, S.C.

450 NORTH SUNNYSLOPE ROAD
CHANCELLERY PARK I
P.O. DRAWER 825
BROOKFIELD, WISCONSIN 53008-0825

JOSEPH C. NIEBLER, SR.
ROBERT W. MUREN
NORBERT J. BISSONETTE
DON J. PARKER
RICHARD K. GRIEPENTROG
DENNIS F. TOMORSKY
JOSEPH C. NIEBLER, JR.
ANDREW J. NIEBLER

TELEPHONE
(262) 784-6630
FAX
(262) 784-7630

EMAIL
niebmur@execpc.com

OF COUNSEL: THOMAS R. FAHL

September 11, 2003

Attorney Andrew Phillips
Prentice & Phillips, LLP
1110 North Old World Third Street, Suite 405
Milwaukee, WI 53203

>    **Re:**   **Mullins -vs- Karsten, et al**
>            **Case No.: 03-CV-119**

Dear Attorney Phillips:

As a follow-up to my correspondence from July 25, 2003, I have enclosed documents supplementary to the discovery responses provided under cover of said correspondence. One document is marked as "Exhibit C", the other documents are additional documents to be added into "Exhibit E". My clients have been unable to locate documents that could be included as "Exhibit B" at this point. In addition, I still do not have tax returns for Odyssey Entertainment, but expect to be able to relay same to you in the near future. In short, apart from the tax returns, you have everything that my clients can locate at this time which are responsive to your discovery requests.

I would like to note that responses to my client's discovery requests are now over two (2) months late. Please see that these responses are forwarded as soon as possible.

Finally, I did receive the notices of deposition for Mr. Karsten and Ms. Blythe on October 1 and 2, 2003. I would like to speak with you about rescheduling these depositions to a more convenient date and also try to take care of both depositions in one day, if possible. If we have not spoken by the time you receive this correspondence, please contact me so that we can make these arrangements. Thank you.

Very truly yours,

*Joseph C. Niebler, Jr.*

Joseph C. Niebler, Jr.

JNJ:kmh
Enclosures

cc:   Mr. Paul Karsten w/encl.
      Ms. Lisa Blythe w/encl.

*Defendant's Exhibit 1*

**Paul Karsten**

Your website is crap

Do you Yahoo!?
Yahoo! Platinum - Watch CBS' NCAA March Madness, live on your desktop!

Email from IP 195.44.57.245

Paulkarsten @ yahoo.com

— Green floor broom stolen by Bob

Exhibit 2

# Network**Solutions**

a VeriSign® company

# ▮Account Summary

**Welcome Bob Mullins**

edit   Account Number/Username: **fuck_you_paul**   **LOG OFF**

Dish Technologies
4836 Woodlawn ct,
Milwaukee, WI 53208 US
edit   Phone: 414-258-2532

## My Account

Summary ◀
Domain Names ◀
E-mail ◀
Web Sites ◀
Business Builders ◀
Renewal Center ◀
Account Info ◀

## Quick links

Register a Domain Name

Consolidate Accounts

Change Billing Address

Transfer Status

Transfer a domain within Network Solutions

Edit your Registrant name

Manage Host Servers

### Domain Names

showing **1 - 2** of **2**

dishtechnologies.tv
odysseydj.com

▶ **Register a Domain Name**

### E-mail

**There are no E-mails in your account.**

▶ **Add E-mailbox(es)**

### Web Sites

**There are no Web Sites in your account.**

▶ **Create a professional Web site**

Build your own Web site with all the layouts, colors and tools you need to design like a professional.

### Business Builders

**There are no Business Builder services in your account.**

▶ **Get listed in top search engines**

Make sure your Web site shows up in all the major search engines, like MSN, LookSmart, Hotbot and more. Get SureList[SM] today.

▶ **Forward your domain name to any Web site**

Use Web forwarding to easily point all your domain names to one Web site.

▶ **Get Web site Hosting**

Host your Web site with ValueWeb®. First month free. No set up charge.

If you have placed an order and your items do not appear above, please click Refresh Account.
It may take up to 48 hours for new purchases to display in your account.





Back to top | About Us | Partnerships | Contact Us | Site Map

Review our Privacy Policy, Service Agreement, Legal Notice and Disclaimer ©
Copyright 2003 Network Solutions, Inc. All rights reserved.

# Network Solutions
a VeriSign® company

HOME   DOMAIN NAMES   WEB SITES   E-MAIL   BUSINESS BUILDERS   RENEW SERVICES   ACCOUNT MANAGER

# ■ WHOIS Search Results

**WHOIS Record for**

**odysseydj.com**　　　　Back-order this name

Registrant:
Dish Technologies (ODYSSEYDJ-DOM)
4836 Woodlawn ct
Milwaukee, WI 53208
US

Domain Name: ODYSSEYDJ.COM

Administrative Contact:
   Dish Technologies (29928783O)　　　laserbob@wi.rr.com
   Dish Technologies
   4836 Woodlawn ct
   Milwaukee, WI 53208
   US
   414-258-2532 fax: 414-258-2532
Technical Contact:
   VeriSign, Inc. (HOST-ORG)　　　namehost@WORLDNIC.NET
   VeriSign, Inc.
   21355 Ridgetop Circle
   Dulles, VA 20166
   US
   1-888-642-9675

Record expires on 19-Jan-2004.
Record created on 19-Jan-1999.
Database last updated on 3-Apr-2003 10:18:48 EST.

Domain servers in listed order:

NS63.WORLDNIC.COM　　　216.168.225.203
NS64.WORLDNIC.COM　　　216.168.225.204

**SEARCH AGAIN**

**Web site hosting Special Offer**

# Transfer your domain names for only

# $19

# a year

includes 1 year extension

▸ Learn more

NOTICE AND TERMS OF USE: You are not authorized to access or query our WHOIS database through the use of high-volume, automated, electronic processes. The Data in Network Solutions' WHOIS database is provided by Network Solutions for information purposes only, and to assist persons in obtaining information about or related to a domain name registration record. Network Solutions does not guarantee its accuracy. By submitting a WHOIS query, you agree to abide by the following terms of use: You agree that you may use this Data only for lawful purposes and that under no circumstances will you use this Data to: (1) allow, enable, or otherwise support the transmission of mass unsolicited, commercial advertising or solicitations via e-mail, telephone, or facsimile; or (2) enable high volume, automated, electronic processes that apply to Network Solutions (or its computer systems). The compilation, repackaging, dissemination or other use of this Data is expressly prohibited without the prior written consent of Network Solutions. You agree not to use high-volume, automated, electronic processes to access or query the WHOIS database. Network Solutions reserves the right to terminate your access to the WHOIS database in its sole discretion, including without limitation, for excessive querying of the WHOIS database or for failure to otherwise abide by this policy. Network Solutions reserves the right to modify these terms at any time.



Back to top | About Us | Partnerships | Contact us | Site Map

Review our Privacy Policy, Service Agreement, Legal Notice and Disclaimer ©
Copyright 2003 Network Solutions, Inc. All rights reserved.



# ▮WHOIS Search Results

**WHOIS Record for**

**dishtechnologies.tv**          Back-order this name

Registrant:
Dish Technologies (DISHTECHNOLOGIES-DOM)
    4836 Woodlawn ct
    Milwaukee, WI 53208
    US

    Domain Name: DISHTECHNOLOGIES.TV

    Administrative Contact:
        Dish Technologies (299287830)          laserbob@wi.rr.com
        Dish Technologies
        4836 Woodlawn ct
        Milwaukee, WI 53208
        US
        414-258-2532 fax: 414-258-2532
    Technical Contact:
        VeriSign, Inc. (HOST-ORG)          namehost@WORLDNIC.NET
        VeriSign, Inc.
        21355 Ridgetop Circle
        Dulles, VA 20166
        US
        1-888-642-9675

    Record expires on 18-May-2003.
    Record created on 18-May-2001.
    Database last updated on 3-Apr-2003 10:26:40 EST.

    Domain servers in listed order:

    NS41.WORLDNIC.COM          216.168.225.171
    NS42.WORLDNIC.COM          216.168.225.172

**SEARCH AGAIN**

## Transfer your domain names for only

# $19

## a year

includes 1 year extension

▸ Learn more

**Web site hosting Special Offer**

NOTICE AND TERMS OF USE: You are not authorized to access or query our WHOIS database through the use of high-volume, automated, electronic processes. The Data in Network Solutions' WHOIS database is provided by Network Solutions for information purposes only, and to assist persons in obtaining information about or related to a domain name registration record. Network Solutions does not guarantee its accuracy. By submitting a WHOIS query, you agree to abide by the following terms of use: You agree that you may use this Data only for lawful purposes and that under no circumstances will you use this Data to: (1) allow, enable, or otherwise support the transmission of mass unsolicited, commercial advertising or solicitations via e-mail, telephone, or facsimile; or (2) enable high volume, automated, electronic processes that apply to Network Solutions (or its computer systems). The compilation, repackaging, dissemination or other use of this Data is expressly prohibited without the prior written consent of Network Solutions. You agree not to use high-volume, automated, electronic processes to access or query the WHOIS database. Network Solutions reserves the right to terminate your access to the WHOIS database in its sole discretion, including without limitation, for excessive querying of the WHOIS database or for failure to otherwise abide by this policy. Network Solutions reserves the right to modify these terms at any time.


reviewed by
site privacy statement



# ■WHOIS Search Results

## ■ WHOIS Record for

**dishtechnologies.tv**          Back-order this name

Registrant:
Dish Technologies (DISHTECHNOLOGIES-DOM)
4
Milwaukee, WI 53208
US

Domain Name: DISHTECHNOLOGIES.TV

Administrative Contact:
   Dish Technologies (299287830)      laserbob@wi.rr.com
   Dish Technologies
   4
   Milwaukee, WI 53208
   US
   (414) 258-2532 fax: 414
Technical Contact:
   VeriSign, Inc. (HOST-ORG)      namehost@WORLDNIC.NET
   VeriSign, Inc.
   21355 Ridgetop Circle
   Dulles, VA 20166
   US
   1-888-642-9675

Record expires on 18-May-2003.
Record created on 18-May-2001.
Database last updated on 28-Apr-2003 22:24:37 EDT.

Domain servers in listed order:

NS41.WORLDNIC.COM      216.168.225.171
NS42.WORLDNIC.COM      216.168.225.172

**SEARCH AGAIN**

## Transfer your domain names for only

# $19

## a year

includes 1 year extension

▸ Learn more

**COMING IN JUNE...**
## A Faster and Easier Account Manager!

- Access all domains and accounts with a **single login**
- Sort, search, and make changes **easily** across domains
- Assign and revoke account access **without sharing passwords**
- Manage domains more **quickly** with **simplified navigation**

Find out more

Web site hosting Special Offer

NOTICE AND TERMS OF USE: You are not authorized to access or query our WHOIS database through the use of
high-volume, automated, electronic processes. The Data in Network Solutions' WHOIS database is provided by
Network Solutions for information purposes only, and to assist persons in obtaining information about or related
to a domain name registration record. Network Solutions does not guarantee its accuracy. By submitting a
WHOIS query, you agree to abide by the following terms of use: You agree that you may use this Data only for
lawful purposes and that under no circumstances will you use this Data to: (1) allow, enable, or otherwise
support the transmission of mass unsolicited, commercial advertising or solicitations via e-mail, telephone, or
facsimile; or (2) enable high volume, automated, electronic processes that apply to Network Solutions (or its
computer systems). The compilation, repackaging, dissemination or other use of this Data is expressly
prohibited without the prior written consent of Network Solutions. You agree not to use high-volume,
automated, electronic processes to access or query the WHOIS database. Network Solutions reserves the right

# ▮WHOIS Search Results

### ▮ WHOIS Record for

**odysseydj.com**        Back-order this name

Registrant:
Dish Technologies (ODYSSEYDJ-DOM)
4
Milwaukee, WI 53208
US

Domain Name: ODYSSEYDJ.COM

Administrative Contact:
Dish Technologies (29928783O)        laserbob@wi.rr.com
Dish Technologies
4
Milwaukee, WI 53208
US
(414) 258-2532 fax: 414
Technical Contact:
VeriSign, Inc. (HOST-ORG)        namehost@WORLDNIC.NET
VeriSign, Inc.
21355 Ridgetop Circle
Dulles, VA 20166
US
1-888-642-9675

Record expires on 19-Jan-2004.
Record created on 19-Jan-1999.
Database last updated on 28-Apr-2003 22:35:32 EDT.

Domain servers in listed order:

NS1.BIZ.RR.COM        24.30.200.19
NS2.BIZ.RR.COM        24.30.201.19
DNS4.RR.COM        65.24.0.172

SEARCH AGAIN

COMING IN JUNE...
## A Faster and Easier Account Manager!

- Access all domains and accounts with a **single login**
- Sort, search, and make changes **easily** across domains
- Assign and revoke account access **without sharing passwords**
- Manage domains more **quickly** with simplified navigation

Find out more

## Transfer your domain names for only

# $19

## a year

includes 1 year extension

▸ Learn more

Web site hosting Special Offer

NOTICE AND TERMS OF USE: You are not authorized to access or query our WHOIS database through the use of high-volume, automated, electronic processes. The Data in Network Solutions' WHOIS database is provided by Network Solutions for information purposes only, and to assist persons in obtaining information about or related to a domain name registration record. Network Solutions does not guarantee its accuracy. By submitting a WHOIS query, you agree to abide by the following terms of use: You agree that you may use this Data only for lawful purposes and that under no circumstances will you use this Data to: (1) allow, enable, or otherwise support the transmission of mass unsolicited, commercial advertising or solicitations via e-mail, telephone, or facsimile; or (2) enable high volume, automated, electronic processes that apply to Network Solutions (or its computer systems). The compilation, repackaging, dissemination or other use of this Data is expressly prohibited without the prior written consent of Network Solutions. You agree not to use high-volume,

domain dispute.com

Alli

Legal dept. — 703-450-7582

Service # 1-256DLU
Request
— Log In
— 2 Fax

**From :** Network Solutions <custserv@netsol.com>
**To :** "'pkodyssey@hotmail.com'" <pkodyssey@hotmail.com>
**Subject :** Network Solutions: Your Account Login
**Date :** Tue, 29 Apr 2003 07:25:13 -0700

Dear Paul Karsten

Thank you for your inquiry received on 4/29/2003 9:10:32 AM.

Your Account Login Name is: FUCK_OFF_PAUL

If you would like to contact us in the future about this inquiry, please provide number 1-25GDLU to our customer service representative.

Thank you for choosing Network Solutions.

Sincerely,

Network Solutions
www.networksolutions.com

Please do not reply directly to this email address. We will not be responding to email sent to this address.


To reach Network Solutions, please visit our web site at www.networksolutions.com or send an email to customerservice@networksolutions.com.

Thank you.



**PRENTICE & PHILLIPS** LLP
ATTORNEYS AT LAW

1110 N. Old World Third Street, Suite 505
Milwaukee, Wisconsin 53203-1117
(414) 277-7780 · (414) 277-7783 Fax
http://www.prentice-phillips.com

July 23, 2004


Ryan Harrington, Esq.
D'Angelo & Jones, LLP
N14 W23755 Stone Ridge Drive, Suite 200
Waukesha, WI 53188

Re:     *Mullins v. Karsten,* et al.
        Case No. 03-CV-119
        Chapter 7 bankruptcy filing of Paul Karsten
        Chapter 7 bankruptcy filing of Lisa Blythe

Dear Attorney Harrington:

I write this letter as a follow-up to our previous conversations regarding the receivers bought and paid for by Mr. Mullins, in Mr. Mullins' possession, but "titled" or otherwise assigned to Odyssey Entertainment LLC. The reason these receivers were titled in Odyssey's name, rather than Mr. Mullins', was because the receivers could only be "purchased" by a dealer, which Odyssey was at that time. However, these receivers were bought and paid for by Mr. Mullins, with his personal credit cards and with proceeds from the SBA loan, which was the subject of our circuit court suit with your clients. We have the credit card transaction statements in our file, and I do not anticipate a dispute as to who actually paid for the receivers.

We are in contact with the legal department for EcoSphere, the retailer. Though we were, at first, optimistic that Mr. Mullins would be able to return the receivers to EcoSphere (minus a considerable restocking fee), EcoSphere will not take the receivers back because they are "outdated." Nonetheless, Mr. Mullins believes he can still make use of the receivers and, therefore, we need to "title" the receivers in Mr. Mullins' name, in order for him to have the option of activating them. This is not a simple process and cannot be done without your clients' cooperation.

Mr. Scott Novak, one of the attorneys for EcoSphere, has graciously agreed to assist us despite certain contract language, which would otherwise prohibit one dealer (Odyssey) from transferring ownership to another (Mr. Mullins). In order to proceed, Mr. Novak needs you, the attorney for Mr. Karsten and Ms. Blythe, the principals of Odyssey, to prepare a brief letter to EcoSphere's legal department indicating two things. First, the letter must acknowledge that Mr. Mullins owns the receivers and that Mr. Karsten and

**CLIENT COPY**



Ms. Blythe, on behalf of themselves and Odyssey, divest themselves of any and all ownership interest in the receivers at issue. Second, the letter must indicate that the bankruptcy court has no jurisdiction over Odyssey and the receivers, and that a transfer of ownership, as contemplated here, will not interfere with the bankruptcy proceedings and will not otherwise be an issue. In other words, Mr. Novak wants to be assured that EcoSphere is not impeding the bankruptcy or doing something that is contrary to the bankruptcy code.

Any letter written should be addressed as shown below, but mailed to my office so that I can fax it to Mr. Novak.

> EcoSphere
> Legal Department
> 9601 S. Meridian Boulevard
> Englewood, IL 80112

Please advise whether your clients are agreeable.

If you have any further inquiries regarding this matter, please do not hesitate to contact us. Thank you for your cooperation.

Very truly yours,

PRENTICE & PHILLIPS LLP

Evan N. Claditis, Esq.
enc@prentice-phillips.com

ENC/ksm

# D'ANGELO JONES, LLP

## ATTORNEYS AT LAW
www.dangelojones.com

**WAU...**
N14 W23755 Ston... ...rive
Stone Ridge I – Suite 200
Waukesha, WI 53188
262.523.4321 • Fax 262.523.4322

**MADISON OFFICE**
22 N. Carroll Street - Suite 101
Madison, WI 53703
608.240.0245

**SAN FRANCISCO OFFICE**
311 California Street
Suite 210
San Francisco, CA 94104

PATRICIA JONES D'ANGELO
COURT COMMISSIONER
THOMAS R. JONES
ALSO LICENSED IN CALIFORNIA
CHRISTINE DAVIES D'ANGELO
ALISON H. SPAKOWITZ
RYAN J. HARRINGTON
MELISSA M. PEHL

CHERYL A. BLENKER
OFFICE MANAGER

June 15, 2004

Bruce Lanser
205 E. Wisconsin Ave, #140
Milwaukee, WI 53202

Re:    **Chapter 7 Bankruptcy of Paul Karsten**
       **Case No.: 04-26017**
       **Chapter 7 Bankruptcy of Lisa Blythe**
       **Case No.: 04-26018**

Dear Bruce:

Enclosed please find a copy of the Dismissal Order as requested by you with regard to the claim of Robert Mullins against the above-referenced debtors and their counterclaims against Mr. Mullins.

You will note that Mr. Mullins' claims and any counterclaims by the debtors in Case No. 03 CV 119 have been dismissed with the understanding that the matter may be reopened upon notification that the bankruptcy proceedings have been terminated or the suspension lifted.

Should you require any additional documentation or information, please do not hesitate to contact me. Thank you.

Very truly yours,

RYAN J. HARRINGTON
Attorney at Law

RJH:aml
Enclosure

cc:    ✓ Paul Karsten (w/Enclosure)
       Lisa Blythe (w/Enclosure)

Exhibit 4

Sidney Day
2002-
321-3750

**STATE OF WISCONSIN**

FILED
IN CIRCUIT COURT

APR 2 9 2004

WAUKESHA CO. WIS.
CIVIL DIVISION

**CIRCUIT COURT**

**WAUKESHA COUNTY**

Robert Mullins,
        **PLAINTIFF,**

      vs.

Paul Karsten et al,
        **DEFENDANT.**

**DISMISSAL ORDER**
**CASE # 03 CV 119**

---

   ☒  a bankruptcy proceeding has been filed in the United States Bankruptcy Court;

   ☐  a petition has been filed for removal to the United States District Court;

   ☐  No service was made upon the defendant(s) of an authenticated copy of the summons and complaint within 90 days after filing, as required by §801.02(1), Stats.;

   ☐  The matter has not been diligently prosecuted;

   ☐  The parties have agreed to have this matter submitted to binding arbitration.

   ☐  The plaintiff wishes to voluntarily dismiss this matter.

   ☐  Other: _____.

**NOW, THEREFORE, IT IS ORDERED,** upon the court's own motion, this matter is hereby dismissed:

   ☐  With prejudice           ☒  Without prejudice.

   ☐  With costs of $_____         ☒  Without costs.

   ☐  With the understanding that the case may be reopened upon notification from plaintiff's attorney at any time in the future that:

   ☒  (a)  The bankruptcy proceedings have been terminated or the suspension lifted.

   ☐  (b)  The petition for removal to the United States District Court has not been allowed or the case has otherwise been remanded to the circuit court.

**IT IS SO ORDERED** this April 27, 2004.

          **BY THE COURT:**

          Patrick C. Haughney
          Circuit Court Judge

H:\TEMPLATES\DISMISSAL ORDER.DOT

**CLIENT COPY**

STATE OF WISCONSIN      CIRCUIT COURT      WAUKESHA COUNTY

ROBERT MULLINS,

            Plaintiff,                  Case No.: 03-CV-119

     vs.                        Case Codes: Intentional Tort, 30106; Other
                                        Contracts, 30303; Unclassified, 30703

PAUL KARSTEN, LISA BLYTHE,
DISH TECHNOLOGIES AND
ODYSSEY ENTERTAINMENT, LLC,

            Defendants.

---

### DEFENDANTS' FIRST SET OF INTERROGATORIES
### AND DOCUMENT REQUESTS TO PLAINTIFF

---

TO:   Mr. Robert Mullins
       c/o Andrew T. Phillips, Esq.
       Prentice & Phillips, LLP
       1110 North Old World Third Street, Suite 405
       Milwaukee, WI 53203

     Defendants, PAUL KARSTEN, LISA BLYTHE, and ODYSSEY ENTERTAINMENT,

LLC, by their attorneys, NIEBLER & MUREN, S.C., request the Plaintiff, ROBERT MULLINS,

to answer under oath the following interrogatories and document requests within thirty (30) days

of the time service is made upon you in accordance with *Wisconsin Statues* §804.08.

### INSTRUCTIONS

     1.    Answer each interrogatory separately and fully in writing under oath unless it is

objected to, in which event the reason for objection must be stated in lieu of the answer.

     2.    An evasive or incomplete answer is deemed to be a failure to answer pursuant to

Section 804.12(1)(b) of the Wisconsin Statutes.

     3.    There is a continuing duty, pursuant to Section 804.01(5) of the Wisconsin Statutes,

to reasonably supplement responses with respect to any question directed to identity and location

Exhibit
6

of persons having knowledge of discoverable matters, and the identity of each person expected to be called as an expert witness at a trial and the subject matter on which he is expected to testify. Furthermore, there is a duty to correct any responses that were incorrect when made or, though correct when made, are no longer true.

4. With regard to each response, please provide the following with respect to each person furnishing relevant information:

    (a)    His or her name.

    (b)    His or her employer and position.

    (c)    The length of such person's employment with his or her present employer and the length of time which he or she has held his or her position.

    (d)    His or her address.

    (e)    If one or more individuals supplied information relating to a response, identify the substance of the information supplied by each individual.

5. With respect to each response, identify every document examined whether or not actually relied upon in formulating your response.

6. In answering these interrogatories, the respondent must furnish all requested information not subject to a valid objection that is known by, possessed by or available to respondent or any of respondent's attorneys, consultants, representatives or any agents or employees.

7. If you identify any document no longer in respondent's possession or subject to respondent's control, state what disposition was made of the document and to whom it was transferred or delivered. If you identify any document which has been destroyed, state the date the document was destroyed and identify the person who ordered or authorized the destruction of the document.

8. For any document responsive to any request herein which you withhold under a claim of privilege or work product, list:

    (a)    The specific request to which the document is responsive;

    (b)    Its title and a brief description of its contents;

    (c)    Its date;

2

(d)     Its author;

(e)     The person or persons for whom it was prepared and all persons to whom it was sent; and

(f)     The nature of and basis for the refusal to produce or identify.

## DEFINITIONS

Unless otherwise stated:

1.     Plaintiff means the plaintiff listed in the caption of this action.

2.     Defendant means the defendant listed in the caption of this action.

3.     "Person(s)" means all natural persons and entities, including corporations, firms, partnerships, joint ventures, sole proprietorships, unincorporated associations or any other business or legal entities, agents or representatives of whatever composition or description.

4.     "Communication" includes any contact or exchange of information or data, whether written, oral, telephonic or telegraphic, directly or indirectly made between persons inquired of.

5.     "All" shall mean any and all, and "any" shall likewise mean any and all.

6.     "He", "him", or "his" shall also be construed to mean "she", "her", or "hers", if applicable.

7.     The words "document," "writings," and "record" as used herein refer to all written or graphic matter, however, produced or reproduced, of every kind and description, now or at any time in your actual or constructive possession, custody, care or control, including the original and all nonidentical copies, whether different from the original by reason or any annotations or notations made thereon, or otherwise, including without limitation, correspondence, memoranda, notes, diaries, statistics, letters, telegrams, minutes, contracts, reports, studies, checks, statements and receipts returned, summaries, pamphlets, books or accounting records, purchase orders, acknowledgments, invoices, bills of lading, shipping and delivery documents, prospectuses, inter- and intraoffice communications, offers, notations of any sort of conversations, telephone calls, meetings, or other communications, bulletins, printed matter, computer printouts, teletypes, thermofaxes, invoices, worksheets, and all drafts, alterations, or modifications, changes and amendments of any of the foregoing, blueprints, plans, specifications, title insurance policies,

3

graphs or oral records, or representations of any kind including, without limitation, tapes, cassettes, discs, and recordings, or things similar to the foregoing however denominated by you.

The document is deemed to be in your actual or constructive possession, custody care or control if you have the right or ability to secure the document or a copy thereof from another person or public or private entity having physical possession thereof.

8.    "Identify" means the following:

    (a)    When used in reference to a <u>person</u>, identify means to state the following information:

        (1)    The person's full name.

        (2)    Present or last known business address;

        (3)    Present or last known employer;

        (4)    Present or last known telephone number;

    (b)    When referring to a <u>document</u>, identify means to state the following information:

        (1)    Name of document:

        (2)    Type of document (e.g. letter, memorandum, telegram, chart, etc.)

        (3)    Substance of document;

        (4)    The reason the document was prepared;

        (5)    The date the document was prepared and/or executed;

        (6)    Identification of the person(s) who prepared the document;

        (7)    Identification of the present custodian of the document;

        (8)    Identification and address of each person who received a copy of the document.

    (c)    When referring to an <u>oral communication</u>, identify means to state the following information:

        (1)    The date of such communication;

        (2)    Each person participating therein and each person who was present;

4

(3)    What was said by each participant in the course of such communication, or, if not known or recalled, the substance of such communication;

(4)    Whether there are any documents which set forth, summarize or otherwise refer to any portion of such oral communication; and

(5)    If such documents exist, to identify such document and each person having custody of the document.

(b)    When referring to something other than a person, document or oral communication, identify or identity means to provide a description sufficient to distinguish the thing identified from other things of a similar nature.

9.    Whenever a term is expressed in the singular, such term shall be construed to mean the plural, if applicable.

## OBJECTIONS

If you object to any interrogatory or any portion thereof on the grounds that it requires information that is privileged or falls within the work product doctrine, provide the following information, except as it may call for the precise information you object to disclosing:

1.    State the nature of the privilege or doctrine you claim.

2.    If a document:

(a)    Identify it;

(b)    Identify all persons known to you to have seen the document.

3.    If an oral communication:

(a)    Identify it; and

(b)    Identify all persons known to you to whom the substance of the oral communication has been disclosed.

Pursuant to Section 804.08(1)(b) of the Wisconsin Statutes, any objection must be signed by the attorney making them.

5

## INTERROGATORIES

**INTERROGATORY NO. 1:** Identify all witnesses that will or may testify on the Plaintiff's behalf during the trial of this matter. With respect to each witness, provide a detailed description of the facts he or she has knowledge of and to which you expect each witness to testify during the trial of this matter.

**INTERROGATORY NO. 2:** Identify each person whom you have retained or expect to retain as an expert witness regarding any matter involved in this litigation and with respect to each such expert witness:

    (1)    Provide the expert's name, home and business addresses, occupation, educational background, employer and specialty;

    (2)    Provide the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion;

    (3)    Provide the caption, the court or agency involved, and the case number of each prior or current action in which the expert has testified at trial or been deposed as an expert within the previous five (5) years;

    (4)    Identify each document the expert witness has received from you or your counsel; and

    (5)    Identify all documents, textbooks, treatises, periodicals, and other publications that will be utilized by the expert witness in the preparation or substitution of his or her testimony in this litigation.

**INTERROGATORY NO. 3:** Describe any business transactions Plaintiff has had in the past with any of the Defendants and with respect to each business transaction provide the following:

    (1)    State which of the Defendants was involved;

    (2)    Provide the terms of any agreement that was made;

    (3)    State whether the transaction was completed;

    (4)    State whether each party to the transaction fully performed;

    (5)    Provide the date(s) over which the transaction occurred;

6

(6)    Identify any documents that were involved in the transaction including, but not limited to, correspondence, contracts, memoranda, etc., and

(7)    Provide the amount of money, if any, that was involved in the transaction(s).

**INTERROGATORY NO. 8:** Identify any person(s), other than any of the parties to this litigation, who have knowledge of the negotiations and/or discussions leading up to the execution of Exhibit A to the Complaint. For each person identified, describe what facts he or she has knowledge of.

**INTERROGATORY NO. 9:** Regarding the SBA loan that was obtained by the Plaintiff, provide the following:

(1)    Identify the person(s) at Sunset Bank & Savings with whom the Plaintiff worked to obtain the loan;

(2)    Describe the type of collateral Sunset Bank & Savings requested as security for the loan;

(3)    Describe the collateral that the Plaintiff agreed to use for security on the loan;

(4)    The principal balance currently owing on the loan; and

(5)    State whether any of the assets of Odyssey Entertainment, LLC were listed as collateral within any of the loan documents and, if not, explain why such assets were not included.

**INTERROGATORY NO. 6:** Identify all persons who had authority to draw money from the SBA loan on behalf of Dish Technologies.

**INTERROGATORY NO. 7:** Explain the process by which money was drawn from the SBA loan (i.e., did it require a formal draw request from someone with an authorization by the Plaintiff or was another process in place?) and provide the following:

(1)    The date each draw from the SBA loan was made;

(2)    Who requested each such draw and who authorized it;

(3)    The amount for each such draw;

(4)    Where the money was deposited; and

7

(5)     What the money from each such draw was used for.

**INTERROGATORY NO. 8:** Describe the recording process the Plaintiff used to account for the draw made from the SBA loan.

**INTERROGATORY NO. 9:** Identify each principal of Egotech and provide the following:

      (1)     The type of entity Egotech is;

      (2)     When Egotech was first formed;

      (3)     When Egotech first began doing business;

      (4)     Identify the types of activity(ies)/business(es) Egotech has participated in since its inception;

      (5)     If Egotech sells and/or installs satellite television systems, identify all company(ies) that are or have supplied satellite programming to Egotech;

      (6)     Provide gross sales figures for Egotech for the years of 2001, 2002 and thus far in 2003; and

      (7)     Identify all source(s) from which Egotech obtained funds for its initial "start-up" operations and provide the amount each such source provided.

**INTERROGATORY NO. 10:** Provide the gross sales figures for Dish Technologies for 2002 and thus far in 2003 and identify all source(s) of sales for Dish Technologies during 2002 and 2003.

**INTERROGATORY NO.11:** Other than the proceeds of the SBA loan from Sunset Bank & Savings, state whether Plaintiff provided any other funds for Dish Technologies and, if so, provide the following:

      (1)     The amount of such funds;

      (2)     How such funds were obtained by Plaintiff;

      (3)     Date(s) such funds were provided; and

      (4)     What Dish Technologies used such funds for.

**INTERROGATORY NO. 12:** Describe what task(s) Plaintiff performed on behalf of Dish Technologies on a regular basis (whether it be daily, weekly, monthly, etc.) and state how often each such task was performed (i.e., daily, weekly, monthly, etc.).

8

**INTERROGATORY NO. 13:** State whether Plaintiff's role in the business of Dish Technologies has changed since its inception and, if so, provide a description of how the Plaintiff's role has changed indicating what it was initially, how it changed over time and what it has become most recently.

## DOCUMENT REQUESTS

**REQUEST NO. 1:** Copies of all documents identified, used or referred to in any of your answers to the above and foregoing interrogatories.

**REQUEST NO. 2:** Copies of all correspondence between the Plaintiff and any of the Defendants from January, 2002 to the present.

**REQUEST NO. 3:** Copies of all correspondence between the Plaintiff and any other person or entity regarding Dish Technologies.

**REQUEST NO. 4:** Copies of all documents regarding the SBA loan from Sunset Bank & Savings.

**REQUEST NO. 5:** Copies of all bank statements for any account of Dish Technologies.

**REQUEST NO. 6:** Copies of all check registers for any account of Dish Technologies.

**REQUEST NO. 7:** Copies of all statements made by any interested party or witness that is in any way related to any matter involved in this litigation.

**REQUEST NO. 8:** Copies of all diaries, notes, calendar references, statements, memoranda, recordings, correspondence or other written or tangible material which in any way records or reflects the matters and events involved in or related in any way to the events referred to in Plaintiff's Complaint or Defendants' Answer and Counterclaims.

**REQUEST NO. 9:** Copies of all financial documents concerning Dish Technologies.

**REQUEST NO. 10:** Copies of all correspondence between Egotech or the Plaintiff and any entity which provides satellite programming services.

**REQUEST NO. 11:** Copies of any documents which indicate in any way the Plaintiff's role in the daily business of Dish Technologies.

**REQUEST NO. 12:** Copies of all contracts and/or agreements made between Dish Technologies and any of its customers.

9

Dated at Brookfield, Wisconsin this 2nd day of June, 2003.

NIEBLER & MUREN, S.C.
Attorneys for the Plaintiff


By: _____
Joseph C. Niebler, Jr.
State Bar No.: 1023250




NIEBLER & MUREN, S.C.
450 North Sunnyslope Road, Suite 270
Post Office Drawer 825
Brookfield, WI 53008-0825
(262) 784-6630

10

STATE OF WISCONSIN            CIRCUIT COURT            WAUKESHA COUNTY

ROBERT MULLINS,

                Plaintiff,               Case No.: 03-CV-119

    vs.                      Case Codes: Intentional Tort, 30106; Other
                                    Contracts, 30303; Unclassified, 30703

PAUL KARSTEN, LISA BLYTHE,
DISH TECHNOLOGIES AND
ODYSSEY ENTERTAINMENT, LLC,

                Defendants.

## ANSWER AND COUNTERCLAIMS OF DEFENDANTS, PAUL KARSTEN, LISA BLYTHE AND ODYSSEY ENTERTAINMENT, LLC

      NOW COME the above-mentioned Defendants, PAUL KARSTEN, LISA BLYTHE, and ODYSSEY ENTERTAINMENT, LLC, by their attorneys, NIEBLER & MUREN, S.C. and as and for their Answer and Counterclaims to the Plaintiff's Complaint state as follows:

      1.      Answering Paragraphs 1 through 3 thereof, admit the allegations contained therein.

      2.      Answering Paragraph 4 thereof, allege that the allegations contained therein are conclusions of law for the Court in this matter to determine and on that basis, deny the same.

      3.      Answering Paragraph 5 thereof, admit the allegations contained therein.

      4.      Answering Paragraph 6 thereof, admit that Mullins, Karsten and Blythe entered into an agreement dated April 19, 2002 and that Exhibit A appears to be a copy of this agreement (herein the "Agreement") allege that the terms of the Agreement speak for themselves and deny any allegation inconsistent therewith.

      5.      Answering Paragraph 7 thereof, allege that the terms of the Agreement speak for themselves and deny anything alleged in Paragraph 7 inconsistent therewith.

      6.      Answering Paragraphs 8 through 9 thereof, admit the allegations contained therein.

      7.      Answering Paragraph 10 thereof, deny information sufficient to form a belief as to the truth of the allegations contained therein and on that basis, deny the same.

Exhibit 6

8.       Answering Paragraph 11 thereof, deny the allegations contained therein.

9.       Answering Paragraphs 12 through 13 thereof, deny information sufficient to form a belief as to the truth of the allegations contained therein and on that basis deny the same.

10.      Answering Paragraph 14 thereof, incorporates the answers to Paragraphs 1 through 13 above as though fully set forth herein.

11.      Answering Paragraphs 15 through 17 thereof, deny the allegations contained therein.

12.      Answering Paragraphs 18 thereof, admit the allegations contained therein.

13.      Answering Paragraph 19 thereof, deny the allegations contained therein.

14.      Answering Paragraph 20 thereof, deny information sufficient to form a belief as to the truth of the allegations contained therein and on that basis deny the same.

15.      Answering Paragraphs 21 through 22 thereof, deny the allegations contained therein.

16.      Answering Paragraph 23 thereof, incorporate the answers to Paragraphs 1 through 22 above as though fully set forth herein.

17.      Answering Paragraph 24 thereof, allege that the allegations contained therein are a conclusion of law and further that the terms of the Agreement speak for themselves and deny any allegations inconsistent therewith.

18.      Answering Paragraphs 25 through 27, deny the allegations contained therein.

19.      Answering Paragraph 28 thereof, incorporate the answers to Paragraphs 1 through 27 above as through fully set forth herein.

20.      Answering Paragraph 29 thereof allege that the allegations contained therein with respect to the status of Mullins, Karsten and Blythe as partners in Dish Technologies under Wis. Stats. Chap. 178 are conclusions of law and deny those allegations on that basis and further allege that the terms of the Agreement speak for themselves and deny any allegations contained therein inconsistent therewith.

21.      Answering Paragraphs 30 through 31 thereof, deny the allegations contained therein.

2

22.     Answering Paragraph 32 thereof, incorporate the answers to Paragraphs 1 through 31 above as though fully set forth herein.

23.     Answering Paragraph 33 thereof, allege that the terms of the Agreement speak for themselves and deny any allegation inconsistent therewith.

24.     Answering Paragraphs 34 through 36 thereof, deny the allegations contained therein.

25.     Answering Paragraph 37 thereof, incorporate the answers to Paragraphs 1 through 36 above as though fully set forth herein.

26.     Answering Paragraph 38 thereof, allege that the terms of the Agreement speak for themselves and deny any allegation inconsistent therewith.

27.     Answering Paragraphs 39 through 40 thereof, deny the allegations contained therein.

28.     Answering Paragraph 41 thereof, incorporate the answers to Paragraphs 1 through 40 above as through fully set forth herein.

29.     Answering Paragraphs 42 through 46 thereof, deny the allegations contained therein.

30.     Answering Paragraph 47 thereof, incorporate the answers to Paragraphs 1 through 46 above as though fully set forth herein.

31.     Answering Paragraphs 48 through 50 thereof, deny the allegations contained therein.

32.     Answering Paragraph 51 thereof, incorporate the answers to Paragraphs 1 through 50 above as though fully set forth herein.

33.     Answering Paragraphs 52 through 55 thereof, deny the allegations contained therein.

34.     Answering Paragraph 56 thereof, incorporate the answers to Paragraphs 1 through 55 above as though fully set forth herein.

35.     Answering Paragraph 57 thereof, deny the allegations contained therein.

3

## AFFIRMATIVE DEFENSES

36.     The Plaintiff has failed to allege his claims of fraud and misrepresentation with the specificity required.

37.     The Plaintiff has failed to state a claim upon which he may recover.

38.     Plaintiff had full knowledge of any fact he has alleged was misrepresented to him and, therefore, cannot claim he relied on any such fact to his detriment.

39.     Plaintiff had full knowledge of every fact involved in the transaction culminating in the Agreement and, therefore, assumed the risk of the potential failure of the business arrangements made thereunder.

40.     Plaintiff himself failed to abide by the terms of the Agreement.

41.     Plaintiff's failure to abide by the terms of the Agreement has solely caused the losses he claims to have incurred.

42.     The Statute of Frauds prevents enforcement of the Agreement against Defendant, ODYSSEY ENTERTAINMENT, LLC.


## COUNTERCLAIMS

As and for their counterclaims against the Plaintiff, ROBERT MULLINS, the Defendants allege as follows:


## I. CONVERSION

43.     The Defendants owned the property included in the list attached hereto and incorporated herein as Exhibit A (herein the "Property").

44.     The Property was used in the business of ODYSSEY ENTERTAINMENT, LLC and also in the business the parties conducted as DISH TECHNOLOGIES.

45.     The Property had been previously stored at 21850 Watertown Road, Waukesha, Wisconsin.

46.     The Plaintiff had access to the facility where the Property was located and had knowledge that the Property was located there. The Plaintiff was also told not to enter the location

4

without either PAUL KARSTEN or LISA BLYTHE present and knew that the Property located therein was not his.

47.     Between the dates of November 13 and November 18, 2002, the Plaintiff removed the Property without the Defendants' knowledge and without any permission to do so.

48.     The Defendants have made demand upon Plaintiff to return the Property, but he has refused, failed and/or neglected to do so.

49.     Plaintiff has wrongfully converted the Property to his own use against the will of the Defendants.

50.     The Defendants have been damaged by such conversion in that they have lost the value associated with the Property.

## II.  BREACH OF CONTRACT

51.     Reallege and incorporate by reference the allegations contained within Paragraphs 43 through 50 as though fully set forth herein.

52.     The Defendants, PAUL KARSTEN and LISA BLYTHE, did enter into the Agreement with the Plaintiff, ROBERT MULLINS.

53.     The terms of said Agreement require, among other things:

    (a)     That ROBERT MULLINS was to contribute at least twenty (20) hours per week to DISH TECHNOLOGIES;

    (b)     That ROBERT MULLINS was required to uphold and protect the relationships and reputation of DISH TECHNOLOGIES at all times; and

    (c)     That ROBERT MULLINS was required not to cause harm to the economic status of DISH TECHNOLOGIES.

54.     ROBERT MULLINS failed to contribute the time required under the Agreement.

55.     ROBERT MULLINS failed to protect the relationships of DISH TECHNOLOGIES and did harm the economic status of DISH TECHNOLOGIES by opening a separate account with the Dish Network under the name of Egotech and diverting business from DISH TECHNOLOGIES to Egotech.

5

56.     PAUL KARSTEN and LISA BLYTHE have met all of their obligations under the Agreement including, but not limited to, the time commitment they were required to make.

57.     Due to the time commitment PAUL KARSTEN and LISA BLYTHE made to DISH TECHNOLOGIES, they were unable to spend time in their other businesses and have lost wages and profits in such other businesses as a result.

58.     In accordance with their obligations under the Agreement, PAUL KARSTEN and LISA BLYTHE sought office space in Brookfield for the purpose of establishing a principal office for DISH TECHNOLOGIES.

59.     On February 28, 2002, PAUL KARSTEN and LISA BLYTHE executed a Lease for a period of three (3) years for office space located at 21850 Watertown Road, Waukesha, Wisconsin (herein the "Lease").  A true and correct copy of the Lease is attached hereto and incorporated herein as Exhibit B.

60.     In accordance with the terms of the Lease, PAUL KARSTEN and LISA BLYTHE were required to personally guarantee the Rent due under the entire term of the Lease.

61.     Due to the Plaintiff's failure to abide by the terms of the Agreement and the resulting failure of DISH TECHNOLOGIES, PAUL KARSTEN and LISA BLYTHE have had to vacate the premises identified in the Lease and can no longer meet the rent obligations under the Lease.

62.     PAUL KARSTEN and LISA BLYTHE remain liable under the Lease for any unpaid rent due thereunder.

63.     ROBERT MULLINS' actions in failing to abide by the terms of the Agreement have caused damage to PAUL KARSTEN and LISA BLYTHE in the form of lost profits from DISH TECHNOLOGIES, lost profits and lost wages for having to divert their attention from their other businesses to DISH TECHNOLOGIES and any amounts they become liable for as a result of their obligations under the Lease.

**WHEREFORE**, the Defendants, PAUL KARSTEN, LISA BLYTHE and ODYSSEY ENTERTAINMENT, LLC pray for judgment dismissing the Plaintiff's Complaint in its entirety and with prejudice awarding the Defendants their costs and fees and with respect to the Counterclaims pray for judgment as follows:

6

(1)     Pursuant to the First Counterclaim that ROBERT MULLINS be adjudged liable to PAUL KARSTEN, LISA BLYTHE and ODYSSEY ENTERTAINMENT, LLC for the reasonable cost of replacing the items converted and listed within <u>Exhibit A</u> attached hereto;

(2)     Pursuant to the Second Counterclaim that ROBERT MULLINS be adjudged liable to PAUL KARSTEN and LISA BLYTHE for the damages including, but not limited to, the lost profits, lost wages and rent obligations of the Defendants under the Lease, all associated with ROBERT MULLINS' breach of the Agreement; and

(3)     For such other, further and different relief as the Court may deem just and equitable together with the costs and fees associated with this action.

Dated at Brookfield, Wisconsin this 15th day of April, 2003.

NIEBLER & MUREN, S.C.
Attorneys for Defendants


By: _Joseph C. Niebler Jr._____
    Joseph C. Niebler, Jr.
    State Bar No.: 1023250



NIEBLER & MUREN, S.C.
450 North Sunnyslope Road, Suite 270
Post Office Drawer 825
Brookfield, WI 53008-0825
(262) 784-6630

7

## EXHIBIT A TO ANSWER AND COUNTERCLAIMS

1 – 14.4 Volt DeWalt Cordless Drill in Case and Screw Guide

2 – 19 Piece DeWalt Drill Set in Case

2 – Leather Pouches, Drill Holster and Black Work Belt

1 – ⅜" Drill

1 – Arrow T-25 Staples

1 – Blue Combination Screwdriver

1 – Red Magnetic Torpedo Level

3 – 7/16" Combination Wrenches

1 – Analog Satellite Meter

1 – Coax Cable Stripper

1 – Coax Cable Crimper

1 – Telephone Cable Stripper/Crimper

1 – Electrician's Scissors

1 – 50' Blue Fish Tape

1 – Red Compartmentalized Storage Box with various Satellite Installation Supplies and Clear Lid

1 – Tan and Black Toolbox with various Drills, Tapcon Kits, Punch down Tool, Staples, Batteries, etc.

1 – Large D-Cell Maglite

1 – Mini Maglite

1 – Spool of Cl-2 Telephone Cable

1 – Container of RJ-11 and Duplex Phone Jacks

1 – Large Blue Rubbermaid Tub

3 – Medium Rubbermaid Tubs (Blue and Green)

1 – Small Rubbermaid Tubs (Purple)

1 – Samson Wireless Microphone

2 – JBL Control S Speakers

# LEASE

**THIS LEASE** is made as of this _28_ day of February, 2002 by and between BROOKFIELD COMMERCE CENTER, a partnership, of Waukesha, Wisconsin ("Lessor"), and DISH TECHNOLOGIES, LLC, ("Lessee").

    **A.**    <u>Premises</u>. Lessor does hereby lease, demise and let unto said Lessee approximately 5,100 square feet of space (the "Premises") in a commercial building located at ~~21860~~ 21850 Watertown Road in the Town of Brookfield, Wisconsin, known as the Brookfield Commerce Center. The improvements in which the premises are located consist of approximately 61,200 square feet of space (the "Building"). The land and Building are referred to herein as the "Property".

    **B.**    <u>TERM.</u>The term of this Lease is for three (3) year(s) beginning on April 1, 2002 and ending March 31, 2005.

    **C.**    <u>RENT</u>. Lessee shall pay the following amounts to Lessor at the times designated below:
        MONTHLY RENT
    1.    Monthly rental shall be as follows:

        -    April 1, 2002 to March 31, 2003 - $2,028.00 (the Rent).
        -    April 1, 2003 to March 31, 2004 - $2,090.00 (the Rent).
        -    April 1, 2004 to March 31, 2005 - $2,160.00 (the Rent).

    **D.**    <u>SECURITY DEPOSIT</u> of $2,500.00.

    **E.**    <u>REAL ESTATE TAXES.</u>
    Monthly contribution for real estate taxes shall be $315.00 per month (the "Tax Escrow"). The Tax Escrow shall be adjusted each year and the Lessee shall be responsible for 8% of all real and personal property taxes levied against the Land, the Building and the Premises. Lessor will give Lessee within thirty (30) days of receipt of all subject tax bills, a copy of actual real and personal property taxes levied against the Land, the Building and the premises and if the amount paid by Lessee was more than 8% of the total taxes, the difference shall be refunded to the Lessee. If 8% of the actual real and personal taxes levied are more than the amount paid by the Lessee, Lessee shall pay Lessor within thirty (30) days of Lessor's written notice the difference between the amount actually paid by the Lessee and 8% of the total taxes. Lessor agrees to use the 2002 tax bill as "base tax" for purposes of this lease.

    **F.**    <u>MAINTENANCE.</u>
    During the term, Lessee shall pay a monthly contribution for common area maintenance of $157.00 per month (the "Maintenance Fee"). If 8% of the total amount of the cost of maintenance is more than the amount paid by the Lessee, Lessee shall pay Lessor within thirty (30) days of Lessor's written notice the difference between the amount paid by the Lessee and 8% of the total due.

The Rent, payments to the Tax Escrow and the Maintenance Fee shall be payable in advance on the first business day of each and every month during said term to Lessor at 1285 Sunnyridge Road, Pewaukee, Wisconsin 53072. Real estate taxes for the first and last calendar years of this Lease shall be paid by Lessee on a pro rata basis.

    **G.**    <u>COVENANTS</u>. It is mutually agreed and understood between Lessor and Lessee:

        ADDITIONAL RENT
    1.    Lessee shall pay the Rent and the Maintenance Fee, make payments to the Tax Escrow and pay all other obligations hereunder at the times, at the place and in the manner provided for in this Lease promptly, without delay or offset for any reason whatsoever.

# EXHIBIT _B_





2.      All payments hereunder by Lessee to Lessor shall be made at the address specified herein:

> Brookfield Commerce Center
> c/o  Judson and Associates, s.c
> 1285 Sunnyridge Road
> Pewaukee, Wisconsin 53072

or such other address as Lessor may specify in writing to Lessee.   All payments and correspondence by Lessor to Lessee shall be made at the address specified herein:

> Dish Technologies, LLC
> Paul Karsten and Lisa Blythe
> 21850 Watertown Road
> Waukesha, WI  53186

or such other address as Lessee may specify in writing to Lessor.

In the event of Lessee's failure to pay rent by the tenth (10th) day of each month or any amounts due under this lease, such delinquent amounts shall be subject to a late charge of five percent (5%) of the delinquent amount plus interest computed at a rate of eighteen percent (18%) per annum from the due date until the date of actual payment as additional rent.

If, however, after due notice to Lessee of a default and an opportunity to cure the same, Lessee shall refuse to cure or make good any such default, Lessor may, at its option terminate this lease.

USE:
3.      The Premises shall be used solely for Dish Technologies satellite service, Odyssey Entertainment stage, lighting, audio, disk jockey and wedding related services and for no other purposes without the prior written consent of Lessor.  Lessee will not permit the Premises to be used for any immoral or unlawful purpose, or purpose that will injure the reputation of the Premises or the Building, and Lessee will not use or keep in or about the Premises any articles or things, or conduct any activity thereon, that would in any way affect the validity or enforceability of any insurability of the Property.

REPAIR:
4.      Lessor shall not be liable for any damage occasioned by failure to keep the Premises in repair, and shall not be liable for any damage done or occasioned by or from plumbing, gas, water, steam, sewage or other pipes, or the bursting, leaking or running of any tank or pipe in, above, upon or about the Building or the Premises, nor for damage occasioned by water, snow or ice being upon or coming through the roof or otherwise, or for any damage arising from acts or neglect of any party, including Lessee and any other occupants of the Building.

5.      Lessee, during the Term of this Lease, shall keep the interior of the Premises, any improvements made by Lessee and any fixtures located therein, in good repair at its own expense, reasonable use and wear thereof and damage covered by insurance excepted.  Lessee shall keep the sidewalks immediately in front and rear of the Premises clear of ice and snow at Lessee's expense.  Lessee, at Lessee's expense shall provide their own dumpster for waste removal.

REPAIR
6.      Lessee will repair, at its own expense up to $500.00 per year, all electrical fixtures, plumbing fixtures, and other heating, ventilation, and air conditioning equipment and any accessory equipment attached to such equipment of all types that are located within the Premises. Lessor will sign a service contract with a reputable heating and air conditioning contractor to perform bi-annual maintenance for the Lessee's HVAC and Lessor will be reimbursed by the Lessee for the cost of the service contract.

Lessor will maintain and keep Property (excluding the interior of the Premises and fixtures located therein and the doors and other areas that Lessee is responsible for



maintaining hereunder), including all parking lots and grounds, snow removal, maintenance of the lawn, and holding tanks in good and tenantable condition and repair, making or causing to be made all necessary structural ( including structural walls and roof) foreseen and unforeseen repairs. The common area Maintenance Fee paid by Lessee hereunder shall be used by Lessor to reimburse itself for all costs incurred to maintain the Property ( except structural damage) as required under this paragraph.

### PERSONAL PROPERTY:

7.        All personal property of any kind that may be on the Premises during the continuance of this Lease shall be under the control of Lessee. Lessor shall not be liable to Lessee or any other person for any injury, loss or damage to such personal property or to any person on the Premises for any reason whatsoever, except if due to the negligence of the Lessor. Lessee assumes all risk of loss or injury to such personal property and to all partners, officers, agents, employees or customers of said Lessee or other persons coming upon the Premises at the request of, or with the consent or knowledge of, Lessee.

### INSURANCE AND MAINTENANCE:

8. Lessee agrees to purchase at its sole cost and expense, shall maintain at all times during the term of this Lease term and at all times when Lessee is in possession of the Premises, a comprehensive policy of general liability insurance in which the Lessor, Lessor's managing agent and mortgagees designated by Lessor, are named additional insureds for any and all claims arising during the Lease terms for damages or injuries to goods, wares, merchandise, and property and/or for any personal injury or loss of life in, upon, or about the Premises in a combined single limit amount of not less than $4,000,000.00. If Lessee fails to provide such insurance, Lessor may obtain such insurance and pay the applicable premiums, and Lessee agrees to reimburse Lessor on demand for such payments. Lessor shall be responsible for obtaining fire and extended coverage on the Building. Lessee shall be responsible for insuring its personal property located therein. Lessee shall pay all excess insurance premiums required to be paid by Lessor by reason of Lessee's use or occupancy thereof and excess premiums shall mean those premiums in excess of the usual premium for a non-hazardous risk. Any such increase shall be due and payable within thirty (30) days upon presentation of statement by Lessor.

### SUBROGATION:

9. Lessee and Lessor shall waive any and all rights of subrogation which Lessee or Lessor, or their insurers, might have against each other or against each others insurer as the result of any loss or liability arising from the leasing, use or occupancy of the Premises. Upon request,   Lessee agrees to obtain such certificates from their insurance carrier as may be necessary to effect the waiver recited in this paragraph.

### TRUCKING:

10. It is agreed that normal trucking in conjunction with the operation of a warehouse is permitted and that normal trucking requires that trailers should not be parked in the front of the building and should only be parked in the rear at the docks directly behind the Lessee's Premises and that trailers are not to be parked for more than one business day and night. Lessee also will conduct its truck traffic in a manner so as to not cause any congestion in the entire development.

### PARKING SPACES:

11. Lessee shall be entitled to at least four (4) reserved parking spaces at the Building. Lessor agrees that Lessee may have overnight parking of cars, vans, trucks, and occasional parking of trailers in conjunction with normal business operations. Lessee will not use the site for permanent storage of trailers.

### OUTSIDE STORAGE:

12. Lessee will not store any items outside, including but not limited to wood pallets, other wood and metal objects, tires, open storage trailers, unlicensed vehicles, boats, motor homes or trailers unless specified in this lease or written permission is received from Lessor.



## GLASS:

13. Lessee shall keep the glass in the windows of the Premises and the doors to the Premises in good repair at its own expense. If any glass or doors must be replaced, they shall be replaced with identical quality and type of glass or door at Lessee's expense. Construction defects to be corrected by Lessor.

## UTILITIES

14. In addition to the Rent, Lessee shall pay all electrical, gas, and sewer and water charges for the Premises at the time such bills become due and payable.

## PREMISES

15. Lessee shall keep the Premises in a clean and tenantable condition at its own expense.

## COMPLIANCE WITH LAWS

16. Lessee shall obey all federal, state and local laws, ordinances, orders, rules and regulations that apply to the Premises or any business conducted thereon. Lessee will promptly comply with, or cause to be complied with, any directions or certificate of occupancy of any public officer or officers and with the requirements of all policies or public liability, fire and other insurance at any time in force with respect to the Premises. Lessee agrees to apply for and obtain the occupancy permit and the Lessee agrees to cooperate by signing and filling out all required forms.

## SURRENDER

17. Lessee shall repair at its expense, at the termination of this Lease, any damage to the Premises resulting from the driving of nails, marks or other fasteners in any of the walls, ceilings or floors of the Premises. Lessee shall at its expense, at the termination of this Lease, professionally clean the carpeting. All fixtures attached to the wall by Lessee shall, at the option of the Lessor, become the property of the Lessor and if the Lessor elects not to accept such fixtures, Lessee shall remove such fixtures and repair at its own expense any damage to the Premises. Lessee, at Lessee's expense shall re-lamp all fixtures of the Premises.

## SIGNS:

18. Lessee may not exhibit promotional sales signs and placards in the Premises and windows of the Premises. Lessee shall not install any sign to or on the exterior of the premises or affix any advertising or other informational or promotional material or items to the exterior of the premises. Lessor shall furnish a sign to be affixed to the exterior of the premises at the expense of Lessee which the design of the sign shall be approved by Lessee.

19. Lessor may, at reasonable times during the last six (6) months of the Lease Term, enter and show the Premises to persons wishing to rent or purchase the same. Lessor may, at normal business hours, enter and view the Premises. Lessor may during this period, place the usual notice of "To Let" or "For Rent" upon the exterior walls or windows of the Premises and these notices shall remain thereon without hindrance or molestation. Said signs shall be of reasonable size so as to not interfere with the usual conduct of Lessee's business.

## ASSIGNMENT:

20. Lessee will not assign this Lease nor let, sublet or rent the Premises or any part thereof, furnished or unfurnished, without the prior written consent of Lessor. Lessee shall, in any event, remain liable for all obligations of Lessee under this Lease.

## DESTRUCTION OR DAMAGE:

21 (a). In the event of a fire or other casualty in the Leased Premises, Lessee shall immediately give notice thereof to Lessor. If the Leased Premises or the Building shall be damaged or destroyed by fire or other casualty so as to render the Leased Premises wholly or at least forty percent (40%) untenantable, the Rent and Tax Escrow provided for herein shall abate as to the portion of the Leased Premises rendered untenantable as determined by Lessor. Should less than ten percent (10%) of the Leased Premises be rendered untenantable by the casualty, Lessor agrees



to commence and prosecute repair work promptly and with reasonable diligence. In the event that forty percent (40%) or more of the Leased Premises is rendered untenantable by the casualty, Lessor shall decide whether to repair or rebuild within sixty (60) days of such casualty. If Lessor decides not to repair or rebuild, then all rent owed up to the date of such damage or destruction shall be paid by Lessee and this Lease shall terminate upon notice thereof to Lessee. Should Lessor elect to repair or rebuild, the Rent, Maintenance Fee and Tax Escrow payments shall abate until the Leased Premises are reconstructed and tenantable, at which time the Rent, Maintenance Fee and Tax Escrow payments shall recommence. Lessor shall give Lessee written notice of its decision, estimates or elections under this Article "21.(a)". within sixty (60) days after any such damage or destruction.

21 (b). Should Lessor elect to effect any repair, Lessor shall only be obligated to restore or rebuild the Leased Premises and Building to its condition prior to such casualty, and in no event shall Lessor be required to expend an amount in excess of the insurance proceeds in making any such repair or restoration. Lessor's obligation to restore shall not exceed the scope of work required to be done by Lessor in originally constructing the Building and installing standard improvements.

### VACATION OF PREMISES:
22. If Lessee shall abandon or vacate the Premises before the expiration of said Term, Lessor shall be at liberty, at its option, to relet the same and apply the money derived from such reletting, first to the cost and expense of preparing the Premises for such new Lessee and of finding a new Lessee, then to the Rent and other obligations of Lessee due or to become due under this Lease. Lessee shall pay Lessor any deficiency in the event that the rent from the new Lessee is not sufficient to pay the costs described in this paragraph.

### NUISANCE:
23. Should Lessee, or any of its agents, employees, guests, customers or invites, create or permit any nuisance to occur anywhere on the Property, Lessor shall notify Lessee to correct the nuisance, giving ten (10) days notice to do so in writing. If Lessee refuses or fails to correct the nuisance, Lessor may take whatever action it may deem necessary, including termination of this Lease, to eliminate the nuisance, and Lessee shall pay all costs and expenses incurred by Lessor in so doing.

24. Lessee's use and occupancy of the Premises shall not violate any Federal, State or local law, statute or ordinance, including but not limited to applicable zoning ordinances, affecting the Premises.

### QUIT ENJOYMENT:
25. As long as Lessee is not in default of any of Lessee's obligations under this Lease, Lessee shall have the quiet enjoyment of the Premises without interference with the use of the Premises by Lessor.

### MORTGAGE:
26. It is understood and agreed that the Premises are or will be subject and subordinate to the lien of a first mortgage (the "Mortgage"), given or to be given by Lessor to Lessor's mortgagee ("Mortgagee"). Lessee agrees that in the event of the commencement of foreclosure proceedings under the Mortgage, or in the event Mortgagee, or anyone claiming under it, takes possession of the Premises, Lessee shall, at Mortgagee's request, enter into a lease wherein Mortgagee, or a party designated by it, is the Lessor and Lessee is the Lessee upon the same terms and conditions as contained in this Lease. No sale, conveyance, assignment, pledge, encumbrance or transfer of the entry of a foreclosure judgment under the Mortgage shall give Lessee a right of termination under the Lease or a right to claim an eviction from the Premises. In the event of any act or omission by Lessor which would give Lessee a right of termination or a right to claim an eviction (total or partial) under this Lease, Lessee will first give written notice to Mortgagee of such act or omission and a reasonable time to cure such act or omission and, if the same is cured by Mortgagee within a reasonable time, Lessee will not exercise such right.



**FAILURE TO PAY RENT:**

27 (a).   If Lessee shall (a) neglect or fail to pay the Rent after ten (10) days written notice from Lessor and other payments when due, (b) fail to perform and observe any of the covenants or conditions herein before contained, which on its parts are to be performed, and has not corrected it within thirty (30) days after written notice of such failure, (c) have its leasehold estate taken by execution or otherwise, (d) be declared bankrupt or insolvent, or (e) make an assignment for the benefit of its creditors, then Lessor may, immediately or at any time thereafter and without further notice or demand, enter into and upon the Premises and repossess the same and expel Lessee and those claiming under it and remove its effects (forcibly, if necessary) and without prejudice to any remedies which might otherwise be used to collect past due rent or other obligations due hereunder.  Such expulsion and removal, whether by the direct act of Lessor or its assigns or through legal proceedings, shall not affect the liability of Lessee or its representatives for the past Rent or other obligations due or for future Rent or other obligations to accrue under this Lease, but the same shall continue as if such removal or expulsion had not taken place.  Lessor shall have all other and further remedies which may be available at law or in equity including, without limitation, those remedies specified in Chapter 704 of the Wisconsin Statutes.

27.    No assent, express or implied, by Lessor to any breach of any of Lessee's covenants, shall be deemed to be a waiver of any succeeding breach of the same covenant.

**ATTORNEY FEES:**

28.    Lessee further covenants and agrees to pay and discharge all reasonable costs, reasonable attorney fees and expenses that shall be made and incurred by Lessor in enforcing the covenants and agreements in this Lease.

**HOLD-OVER:**

29.    Lessee expressly agrees to quit and deliver up said Premises to Lessor peaceably and quietly at the end of said Term and deliver the keys to Lessor.  If Lessee shall hold over, Lessee shall be deemed to be a month-to-month Lessee and the Rent for such holdover period shall be One Hundred Fifty Percent (150%) of the monthly rental (pro-rated on a daily basis), as stated in Section C of this Lease.

**OPTION:**

30.    At the expiration of this Lease, Lessee shall have the option to extend this Lease on a month to month basis at the same terms and conditions of this Lease.

**HOLD HARMLESS**

31.    Lessee shall indemnify and hold the Lessor harmless from and against any and all claims arising from its use of the Premises, or from the conduct of its business in the Premises, or from any activity, work or things which may be permitted or suffered respectively by Lessee in our about the Premises (except to the extent attributable to Lessor, its agents, contractors, employees or invites).  Lessee shall further indemnify, defend, and hold Lessor harmless from and against any and all claims arising from any breach or default in the performance of any obligation on Lessee's part to be performed under the provisions of this Lease or arising from any of Lessee's acts or the acts of any of its agents, contractors, employees or invites and from any and all costs, attorney fees, expenses and liabilities incurred thereon.

**LEASE SUPERSEDES:**

32.    It is expressly agreed by the parties hereto that this Lease supersedes any and all leases or agreements, whether oral or written, with respect to the rental of the Premises, which documents, instruments and agreements are null and void.

**HAZARDOUS CLAUSE**

33. a.  Notification of Any Release or Discharge.   Lessee shall immediately notify Lessor in writing of any "release" or "discharge" of any Hazardous Substance, whether or



not the release is in quantities that would require under law the reporting of such release to a governmental or regulatory agency.

      b.    Notification of Any Notice, Investigation, or Claim.  Lessee shall also immediately notify Lessor in writing of, and shall contemporaneously provide Lessor with a copy of,

      (i)    Any written notice of release of Hazardous Substances in the Premises that is provided by Lessee or any subLessee or other occupant of the Premises to a governmental or regulatory agency;

      (ii)    Any notice of a violation, or a potential or alleged violation, of any Environmental Law that is received by Lessee or any subLessee or other occupancy of the Premises from any governmental or regulatory agency;

      (iii)    Any inquiry, investigation, enforcement, cleanup, removal, or other action that is instituted or threatened by a governmental or regulatory agency against Lessee or any subLessee or other occupant of the Premises and that relates to the release or discharge of Hazardous Substances on or from the Premises;

      (iv)    Any claim that is instituted or threatened by any third party against Lessee or any subLessee or other occupant of the Premises and that relates to any release or discharge of Hazardous Substance on or from the Premises; and

      (v)    Any notice of the loss of any environmental operating permit by Lessee or any subLessee or other occupant of the Premises.

      c.    Failure to Comply.  Failure to comply with this Clause shall constitute a material default under the Lease.  In the event of such default, Lessor shall have all rights available under the Lease and at law or equity including, without limitation, the right to either:

      (i)    Terminate the Lease and collect damages Lessor incurs as a result of such default, including, without limitation, cleanup costs incurred by Lessor resulting from the cleanup of any Hazardous Substances released into the Premises, soil, or groundwater; or

      (ii)    Require the cleanup of such Hazardous Substances at the Lessee's sole expense while still enforcing the remaining terms and obligations of the Lease.

      d.    Survival.  The obligations within this Clause shall survive the expiration or earlier termination of the Lease.

## ENTIRE AGREEMENT:

34.    This Lease sets forth all the covenants, promises, agreements, conditions and understandings between Lessor and Lessee concerning the Premises and there are no covenants, promises, agreements, conditions or understanding, either oral or written, between them other them other than as are herein set forth.  Except as herein otherwise provided, no subsequent alteration, amendment, change or addition to this Lease shall be binding upon Lessor or Lessee unless reduced to writing and signed by them.  Lessee agrees that Lessor and its agents have made no representations or promises with respect to the Premises or the building or site of which the same are a part except as herein expressly set forth.

## UTILITY DEREGULATION:

36.    Lessor Controls Selection.

      a.    Lessor has advised Lessee that presently Wisconsin Electric Power Company ("Electric Service Provider") is the utility company selected by Lessor to provide electricity service for the Brookfield Commerce Center.  Notwithstanding the foregoing, if permitted by Law, Lessor shall have the right at any time and from time to time during the Lease Term to either contract for service from a different company or companies providing electricity service (each such company shall hereinafter be referred to as an "Alternate Service Provider") or continue to contract for service from the Electric Service Provider.

      b.    Lessee Shall Give Lessor Access.  Lessee shall cooperate with Lessor, the Electric Service Provider, and any Alternate Service Provider at all times and, as reasonably necessary, shall allow Lessor, Electric Service Provider, and any Alternate Service



Provider reasonable access to the Brookfield Commerce Center electric lines, feeders, risers, wiring, and any other machinery within the Premises.

            **c.**     **Lessor Not Responsible for Interruption of Service.**

Lessor shall in no way be liable or responsible for any loss, damage, or expense that Lessee may sustain or incur by reason of any change, failure, interference, disruption, or defect in the supply or character of the electric energy furnished to the Premises, or if the quantity or character of the electric energy supplied by the Electric Service Provider or any Alternate Service Provider is no longer available or suitable for Lessee's requirements, and no such change, failure, defect, unavailability, or unsuitability shall constitute an actual or constructive eviction, in whole or in part, or entitle Lessee to any abatement or diminution of rent, or relieve Lessee from any of its obligations under the Lease.

### ESTOPPEL CERTIFICATES

        36.     Tenant agrees that at any time and from time to time upon not less than ten (10) days prior request of Landlord, Tenant shall execute, acknowledge and deliver to Landlord a statement in writing certifying (a) that this Lease is unmodified and in full force and effect (or if there have been modifications, specifying the same), and (b) the dates to which the rent and other charges have been paid, and (c) that, so far as Tenant knows, Landlord is not in default under any provisions of this Lease (or if Tenant knows of any such default, specifying the same) and (d) such other matters as Landlord or Landlord's mortgagee may reasonably require. It is intended that any such statement may be relied upon by any person proposing to acquire Landlord's interest in this Lease or any prospective mortgagee of, or assignee of any mortgage upon such interest.

### SORTING AND SEPARATION OF REFUSE AND TRASH

        37.     Tenant agrees, at its sole cost and expense, to comply with all present and future laws, orders, and regulations of all state, federal, municipal and local governments, departments, commissions and boards regarding the collection, sorting, separation and recycling of waste products, garbage, refuse and trash into such categories as provided by law. Tenant shall pay all costs, expenses, fines, penalties or damages that may be imposed on Landlord or Tenant by reason of Tenant's failure to comply with the provisions of this paragraph, and, at Tenant's sole cost and expense, shall indemnify, defend and hold Landlord harmless (including attorney fees and expenses) from and against any actions, claims, and suits arising from such noncompliance, utilizing counsel reasonably satisfactory to Landlord.

### INTERPRETATION

        38.     The laws of the State of Wisconsin shall govern the validity, performance and enforcement of this Lease. The invalidity or unenforceability of any provision of this Lease shall not affect or impair any other provision. Whenever the singular number is used, the same shall include the plural, and the masculine gender shall include the feminine and neuter genders. The captions appearing in this Lease are inserted only as a matter of convenience and in no way define, limit, construe or describe the scope or intent of such sections or paragraphs of this Lease not in any way affect this Lease

### FORCE MAJEURE

        39.     In the event that Lessee shall be delayed or hindered in or prevented from the performance of any act required hereunder by reason of strikes, lockouts, labor troubles, terrorist acts, inability to procure materials, failure of power, restrictive governmental laws, regulations, orders or decrees, riots, insurrection, war, acts of God, inclement weather, or other reason beyond Lessee's reasonable control, then performance of such act shall be excused for the period of the delay and the period for the performance of any such act shall be extended for a period equivalent to the period of such delay.

        In the event that Lessor shall be delayed or hindered in or prevented from the performance of any act required hereunder by reason of strikes, lockouts, labor troubles, terrorist acts, inability to procure materials, failure of power, restrictive governmental laws, regulations, orders or decrees, riots, insurrection, war, acts of God, inclement weather, or other reason beyond Lessor's reasonable control, then performance of such act shall be excused for the period of the delay and the period for the performance of any such act shall be extended for a period equivalent to the period of such delay.



40.    ~~On or before March 15, 2004~~, Lessor agrees to ~~remove all of the room dividers in the office,~~ steam clean the carpeting and replace any damaged ceiling tiles.

**IN WITNESS WHEREOF,** the parties have executed this Lease as of the day and year first above written.

BROOKFIELD COMMERCE CENTER          DISH TECHNOLOGIES, LLC

BY: _____                 BY: _____
                                        Paul Karsten

BY: 3-4-02                           BY: _____
                                        Lisa S. Blythe

# GUARANTY OF LEASE

In consideration of the execution by BROOKFIELD COMMERCE CENTER ("Lessor") of a lease date as of February _28_, 2002, (the "Lease") with DISH TECHNOLOGIES, LLC(the "Lessee"), the undersigned ("Guarantor", whether one or more) hereby guarantees to Lessor, its successors and assigns, the full performance and observance by Lessee of all the covenants, conditions and agreements on Lessee's part to be performed and observed during the entire term of the Lease, including without limitation, the payment of Rent, Tax Escrow payment, Maintenance Fees and leasehold improvement costs and all other charges payable by Lessee under the Lease.

Guarantor hereby expressly waives any notice of nonpayment, nonperformance or nonobservance, or proof, notice or demand to charge Guarantor therefor. Guarantor further agrees that the validity of this Guaranty and the obligation of the Guarantor hereunder shall not be terminated, affected or impaired by reason of the assertion or lack of assertion by Lessor against Lessee of any rights or remedies reserved to Lessor under the Lease.

Guarantor further covenants and agrees that this Guaranty shall remain and continue in full force and effect as to any modification or the Lease and during any extension of the term of the Lease.

Guarantor waives any right to require Lessor; (a) to proceed against Lessee; (b) to proceed against or exhaust any security held from Lessee; or (c) to pursue any other remedy in Lessor's power whatsoever.

Guarantor agrees that its guaranty of this Lease shall fully inure to the benefit of any assignees of Lessor's interest therein and to any and all future owners of the Premises as defined in the Lease.

Guarantor agrees to pay all costs incurred by Lessor in enforcing this Guaranty, including reasonable attorneys' fees.

If more than one Guarantor executes this Guaranty, the liability of such Guarantors shall be joint and several.

IN WITNESS WHEREOF, the undersigned have caused this Guaranty to be executed as of the day, month and year first above written.

GUARANTOR: _Lisa S. Blythe_
_Paul Karsten_

## ACKNOWLEDGMENT

STATE OF WISCONSIN

_Waukesha_ County ss.

Personally came before me this _28th_ day of _February_ _2002_ the above named

_Lisa Blythe & Paul Karsten_ to me known to be the person _____ who executed the foregoing instrument and acknowledge the same.

_Mary S. Thompson_ Notary Public _Waukesha_ County, Wis.
My Commission is permanent (if not, state expiration date: _2-16_, _03_.)



March 28, 2005

**VIA HAND DELIVERY**

Clerk for the Honorable Susan V. Kelley
U.S. Courthouse
517 East Wisconsin Avenue
Milwaukee, WI 53202

Re:    Robert Mullins v. Paul A. Karsten
       Case No.     04-26017-svk
       Adv. Proc. No. 04-2275
       Robert Mullins v. Lisa S. Blythe
       Case No.     04-26018-svk
       Adv. Proc. No. 04-2274

Dear Clerk:

Enclosed please find the original and two (2) copies of Defendant's List of Witnesses and Exhibits for filling in each of the above-referenced matters (without applicable exhibits). Please file the originals and return the file-stamped copies to me in the, stamped envelope provided.

For the Court's benefit, the Defendant's List of Witnesses and Exhibits filed are identical in both actions.

By copy of this letter, the above-mentioned documents and exhibits are being served upon defendants. If you have any comments or questions please feel free to contact me at 262-893-8909 or Lisa Blythe at 262-893-8908.

Respectfully,

*Paul Karsten*

Paul Karsten

PAK
Enclosure
cc:    Steven W. Jelenchick